UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) No. 4:19 CR 00398 ERW |
| CLYDE JEFFERSON, | ) ) ) |
| Defendant. | ) ) |

**GUILTY PLEA AGREEMENT**

Come now the parties and hereby agree, as follows:

**1. PARTIES:**

The parties are the defendant, Clyde Jefferson, represented by defense counsel, Matthew Radefeld, and the United States of America (hereinafter "United States" or "Government"), represented by the Office of the United States Attorney for the Eastern District of Missouri. This agreement does not, and is not intended to, bind any governmental office or agency other than the United States Attorney for the Eastern District of Missouri. The Court is neither a party to nor bound by this agreement.

**2. GUILTY PLEA:**

Pursuant to Rule 11(c)(1)(A), Federal Rules of Criminal Procedure, in exchange for the defendant's voluntary plea of guilty to Counts One, Four, Five, Seven, Ten and Thirteen of the Indictment, the government agrees to move for the dismissal as to the defendant of all remaining counts at the time of sentencing. Moreover, the United States agrees that no further federal prosecution will be brought in this District relative to the defendant's involvement in armed

1

robberies, unlawful possession of a firearm by a prohibited person, and possession and distribution of counterfeit United States currency between about August 3, 2018 and February 7, 2019, of which the Government is aware at this time.

In addition, the parties have agreed to make a non-binding recommendation to the Court that the defendant be sentenced to a ten-year term of imprisonment.

**3. ELEMENTS:**

As to Counts One, Four, Seven, Ten, and Thirteen the defendant admits to knowingly violating Title 18, United States Code, Section 1951, and admits there is a factual basis for the plea and further fully understands that the elements of the crime are:

1. The defendant obtained property from another without that person's consent;
2. The defendant did so by wrongful use of actual or threatened force, violence, or fear, and
3. As the result of the defendant's actions, interstate commerce or an item moving in interstate commerce, was actually or potentially delayed, obstructed, or affected in any way or degree.

As to Count Five, the defendant admits to knowingly violating Title 18, United States Code, Section 924(c), and admits there is a factual basis for the plea and further fully understands that the elements of the crime are:

1. The defendant committed the elements of a crime of violence;
2. The defendant knowingly used, carried or possessed a firearm;
3. The brandishing of the firearm was during and in relation to, or the possession of the firearm was in furtherance of, the defendant's crime of violence.

4. **FACTS:**

The parties agree that the facts in this case are as follows and that the government would prove these facts beyond a reasonable doubt if the case were to go to trial. These facts may be considered as relevant conduct pursuant to Section 1B1.3:

*Count One:*

On or about August 3, 2018, St. Louis Metropolitan Police Department ("SLMPD") officers responded to a call for a robbery that occurred in the City of St. Louis, Missouri. The City of St. Louis is located within the Eastern District of Missouri.

Victim J.A. advised the officers that he made arrangements on Facebook Marketplace to sell his iPhone to an unknown individual. J.A. agreed to meet the individual at a location in the City of St. Louis. Upon arriving at the agreed upon location, the defendant approached J.A. and handed him $800.00 of what was later determined to be counterfeit United States ("U.S.") currency in exchange for J.A.'s phone. J.A. realized that the money was counterfeit and demanded that the defendant give him back his phone. The defendant reached into his pants pocket, displayed what appeared to be the pistol grip of a black firearm, and then ran back to his vehicle. The defendant drove away with J.A.'s phone.

In November 2018, J.A. viewed a photospread prepared by the SLMPD and identified the defendant as the individual who stole his phone.

*Counts Four and Five*

On or about September 21, 2018, SLMPD officers responded to a call for a robbery in the City of St. Louis, Missouri. Victim S.H. advised that he made arrangements on Offerup to sell his iPhone to an unknown individual. Upon arriving at the agreed upon location, the defendant

3

approached S.H. and handed him $540.00 of what was later determined to be counterfeit U.S. ("U.S.") currency in exchange for S.H.'s phone. S.H. quickly realized that the money was counterfeit and demanded that the defendant give him back his phone. The defendant reached under his arm and gripped the butt of what appeared to be a pistol. S.H. put his hands in the air and stepped back. The defendant went back to his own vehicle and drove away with J.A.'s phone.

S.H. viewed an SLMPD photospread and identified the defendant as the individual who stole his phone.

*Count Seven*

On or about October 8, 2018, SLMPD officers responded to a call for shots fired in the City of St. Louis. Victim L.R. advised that he made arrangements on Facebook Marketplace to sell his iPhone to an unknown individual. Upon arriving at the agreed upon location, the defendant approached L.R.'s vehicle and showed him a stack of money. L.R. advised the defendant that he wanted to count the money. The defendant threw what was later determined to be a handful of counterfeit currency into L.R.'s car, stole L.R.'s phone, and ran back to his own car. L.R. viewed an SLMPD photospread and identified the defendant as the individual who stole his phone.

The Government would prove the following facts at trial but are disputed by the defendant: Upon realizing that the defendant had paid him with counterfeit currency, L.R. got out of his car at which time the defendant turned around and shot L.R. in the leg.

4

*Count Ten*

On January 8, 2019, SLMPD officers responded to a call for a robbery in the City of St. Louis. Victim A.W. advised the officers that she made arrangements via the Letgo application ("app") to sell two iPhones to an unknown individual for $800.00. A.W. advised that upon arriving at the agreed upon location, A.W. got into the defendant's vehicle and gave the defendant two phones. The defendant handed A.W. what was later determined to be $800.00 of counterfeit currency. A.W. advised that the defendant pulled a gun out of the center console and set it on his lap. A.W. got out of the defendant's car and the defendant drove away with A.W.'s. phone.

A.W. later viewed a photospread and identified the defendant as the individual who stole her phone.

*Count 13*

On or about January 29, 2019, the SLMPD responded to a call for a robbery in the City of St. Louis. Victim E.A. advised that she made arrangements via Facebook Marketplace to sell her iPhone to an unknown individual. E.A. arrived at the agreed upon location and got into the defendant's car. E.A. gave the defendant her phone. The defendant initially handed E.A. some money but then took the money back, took out a gun and ordered her to get out of the car. The defendant kept E.A.'s phone and drove away.

E.A. later viewed an SLMPD photospread and identified the defendant as the person who stole her phone.

On February 7, 2019, the defendant was arrested at the Lumiere Casino in the City of St. Louis. Missouri State Highway Patrol ("MSHP") deputies conducted a lawful search of the

5

defendant's car and recovered a firearm in the center console and approximately 66 counterfeit $20.00 notes.  The MSHP deputies conducted a search of the defendant incident to his arrest and recovered a quantity of a suspected controlled substance.  It was further determined that the defendant's vehicle had been reported stolen from the City of St. Louis in December 2018.

The Government would prove that Facebook is a social networking company headquartered in Menlo Park, California and is a business operating in and affecting interstate commerce.  Facebook Marketplace is a Facebook service which allows anyone with a Facebook profile to list items for sale or buy items listed by other Facebook users directly through Facebook.

The Government would prove that OfferUp is a company headquartered in Bellevue, Washington and is a business operating in and affecting commerce.  The OfferUp platform is a mobile marketplace that facilitates the buying and selling of goods via the OfferUp application.

Letgo is a company headquartered in New York City and is a business operating in and affecting interstate commerce.  Letgo provides users with a website and an app that allows users to buy, sell, and chat with other users.

Facebook, OfferUp and Letgo are all internet-based platforms that operate in and affect interstate commerce.  In this case, the defendant used these internet-based platforms as a tool to set up the robberies charged in this Indictment.

## 5. STATUTORY PENALTIES:

As to Counts One, Four, Seven, Ten, and Thirteen, the defendant fully understands that the maximum possible penalty provided by law for the crime to which the defendant is pleading guilty is imprisonment of not more than twenty years, a fine of not more than $250,000.00, or

both such imprisonment and fine. The Court may also impose a period of supervised release of not more than five years.

As to Count Five, the defendant fully understands that the statutory minimum sentence is seven years and a maximum statutory penalty of life imprisonment and a fine of not more than $250,000.00. The Court may also impose a period of supervised release of not more than five years. The sentence in this Count must run consecutive to sentences imposed for all other counts of conviction.

**6. U.S. SENTENCING GUIDELINES: 2018 MANUAL:**

The parties acknowledge that this offense is affected by the U.S. Sentencing Guidelines and that the actual sentencing range is determined by both the Total Offense Level and the Criminal History Category and have set forth below the parties' positions on the projected applicable Guidelines.

However, the parties have agreed to recommend that the Court impose a ten-year term of imprisonment and will ask for a downward variance from the resulting Total Offense Level.

    **A.**     **Counts One, Four, Seven, Ten, and Thirteen**

        **1. Chapter 2 Offense Conduct:**

        **(a) Base Offense Level:** The parties agree that the Base Offense Level is 20, as found in Section 2B3.1(a).

            **(b) Specific Offense Characteristics:**

                i.     The parties agree that the following Specific Offense Characteristic applies:

7

        (1)    three levels should be added pursuant to Section 2B3.1(b)(2)(E) because a dangerous weapon was brandished or possessed.

    ii.    The defendant does not agree to the application of the following Specific Offense Characteristic:

        (1)    4 levels should be added pursuant to Section 2B3.1(b)(3)(B) because the victim sustained serious bodily injury.

**(c) Chapter 3 Adjustments:**

    i.    The parties agree that three levels should be deducted pursuant to Section 3E1.1(a) and (b), because the defendant has clearly demonstrated acceptance of responsibility and timely notified the government of the defendant's intention to plead guilty. The parties agree that the defendant's eligibility for this deduction is based upon information presently known. If subsequent to the taking of the guilty plea the government receives new evidence of statements or conduct by the defendant which it believes are inconsistent with defendant's eligibility for this deduction, the government may present said evidence to the court, and argue that the defendant should not receive all or part of the deduction pursuant to Section 3E1.1, without violating the plea agreement.

    **B.**    **Count Eight**

    **(1)**    **Base Offense Level:** The parties agree that pursuant to Section 2K2.4, the guideline sentence is the mandatory minimum term of imprisonment (7 years) required by statute. If, however, the defendant is determined to be a career offender under Section 4B1.1 (Career

8

Offender), the guideline sentence shall be determined under Section 4B1.1(c) and may result in a guideline sentence recommendation that is higher than 7 years.

**C. Estimated Total Offense Level:** The parties acknowledge that the Total Offense Level will be determined by the above Guidelines and the application of Chapter 3, Part D because there are multiple counts of conviction.

**D. Criminal History:** The determination of the defendant's Criminal History Category shall be left to the Court. Either party may challenge, before and at sentencing, the finding of the Presentence Report as to the defendant's criminal history and the applicable category. The defendant's criminal history is known to the defendant and is substantially available in the Pretrial Services Report.

**E. Effect of Parties' U.S. Sentencing Guidelines Analysis:** The parties agree that the Court is not bound by the Guidelines analysis agreed to herein. The parties may not have foreseen all applicable Guidelines. The Court may, in its discretion, apply or not apply any Guideline despite the agreement herein and the parties shall not be permitted to withdraw from the plea agreement.

**7. WAIVER OF APPEAL AND POST-CONVICTION RIGHTS:**

**a. Appeal:** The defendant has been fully apprised by defense counsel of the defendant's rights concerning appeal and fully understands the right to appeal the sentence under Title 18, United States Code, Section 3742.

**(1) Non-Sentencing Issues:** The parties waive all rights to appeal all non-jurisdictional, non-sentencing issues, including, but not limited to, any issues relating to pretrial

9

motions, discovery, the guilty plea, the constitutionality of the statute(s) to which defendant is pleading guilty and whether defendant's conduct falls within the scope of the statute(s).

**(2)  Sentencing Issues:**  In the event the Court accepts the plea, accepts the U.S. Sentencing Guidelines Total Offense Level agreed to herein, and, after determining a Sentencing Guidelines range, sentences the defendant within or below that range, then, as part of this agreement, the defendant hereby waives all rights to appeal all sentencing issues other than Criminal History, but only if it affects the Base Offense Level or Criminal History Category. Similarly, the Government hereby waives all rights to appeal all sentencing issues other than Criminal History, provided the Court accepts the plea, the agreed Total Offense Level and sentences the defendant within or above that range.

    b. **Habeas Corpus:**  The defendant agrees to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to Title 28, United States Code, Section 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel.

    c. **Right to Records:**  The defendant waives all rights, whether asserted directly or by a representative, to request from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including any records that may be sought under the Freedom of Information Act, Title 5, United States Code, Section 522, or the Privacy Act, Title 5, United States Code, Section 552(a).

**8. OTHER:**

    a. **Disclosures Required by the United States Probation Office:**  The defendant agrees to truthfully complete and sign forms as required by the United States Probation Office prior to

sentencing and consents to the release of these forms and any supporting documentation by the United States Probation Office to the government.

    b. **Civil or Administrative Actions not Barred; Effect on Other Governmental Agencies:** Nothing contained herein limits the rights and authority of the United States to take any civil, tax, immigration/deportation or administrative action against the defendant.

    c. **Supervised Release:** Pursuant to any supervised release term, the Court will impose standard conditions upon the defendant and may impose special conditions related to the crime defendant committed. These conditions will be restrictions on the defendant to which the defendant will be required to adhere. Violation of the conditions of supervised release resulting in revocation may require the defendant to serve a term of imprisonment equal to the length of the term of supervised release, but not greater than the term set forth in Title 18, United States Code, Section 3583(e)(3), without credit for the time served after release. The defendant understands that parole has been abolished

    d. **Mandatory Special Assessment:** Pursuant to Title 18, United States Code, Section 3013, the Court is required to impose a mandatory special assessment of $100 per count for a total of $600.00, which the defendant agrees to pay at the time of sentencing. Money paid by the defendant toward any restitution or fine imposed by the Court shall be first used to pay any unpaid mandatory special assessment.

    e. **Possibility of Detention:** The defendant may be subject to immediate detention pursuant to the provisions of Title 18, United States Code, Section 3143.

    f. **Fines, Restitution and Costs of Incarceration and Supervision:** The Court may impose a fine, restitution (in addition to any penalty authorized by law), costs of incarceration

and costs of supervision. The defendant agrees that any fine or restitution imposed by the Court will be due and payable immediately. Pursuant to Title 18, United States Code, Section 3663A, an order of restitution is mandatory for all crimes listed in Section 3663A(c). Regardless of the Count of conviction, the amount of mandatory restitution imposed shall include all amounts allowed by Section 3663A(b) and the amount of loss agreed to by the parties, including all relevant conduct loss. The defendant agrees to provide full restitution to all victims of all charges in the indictment.

    **g. Forfeiture:** The defendant knowingly and voluntarily waives any right, title, and interest in all items seized by law enforcement officials during the course of their investigation, whether or not they are subject to forfeiture, and agrees not to contest the vesting of title of such items in the United States. The defendant agrees that said items may be disposed of by law enforcement officials in any manner.

## 9. ACKNOWLEDGMENT AND WAIVER OF THE DEFENDANT'S RIGHTS:

  In pleading guilty, the defendant acknowledges, fully understands and hereby waives his rights, including but not limited to: the right to plead not guilty to the charges; the right to be tried by a jury in a public and speedy trial; the right to file pretrial motions, including motions to suppress or exclude evidence; the right at such trial to a presumption of innocence; the right to require the government to prove the elements of the offenses against the defendant beyond a reasonable doubt; the right not to testify; the right not to present any evidence; the right to be protected from compelled self-incrimination; the right at trial to confront and cross-examine adverse witnesses; the right to testify and present evidence and the right to compel the attendance

of witnesses.  The defendant further understands that by this guilty plea, the defendant expressly waives all the rights set forth in this paragraph.

The defendant fully understands that the defendant has the right to be represented by counsel, and if necessary, to have the Court appoint counsel at trial and at every other stage of the proceeding.  The defendant's counsel has explained these rights and the consequences of the waiver of these rights.  The defendant fully understands that, as a result of the guilty plea, no trial will, in fact, occur and that the only action remaining to be taken in this case is the imposition of the sentence.

The defendant is fully satisfied with the representation received from defense counsel.  The defendant has reviewed the government's evidence and discussed the government's case and all possible defenses and defense witnesses with defense counsel.  Defense counsel has completely and satisfactorily explored all areas which the defendant has requested relative to the government's case and any defenses.

**10. VOLUNTARY NATURE OF THE GUILTY PLEA AND PLEA AGREEMENT:**

This document constitutes the entire agreement between the defendant and the government, and no other promises or inducements have been made, directly or indirectly, by any agent of the government, including any Department of Justice attorney, concerning any plea to be entered in this case.  In addition, the defendant states that no person has, directly or indirectly, threatened or coerced the defendant to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty.

The defendant acknowledges having voluntarily entered into both the plea agreement and the guilty plea. The defendant further acknowledges that this guilty plea is made of the defendant's own free will and that the defendant is, in fact, guilty.

## 11. CONSEQUENCES OF POST-PLEA MISCONDUCT:

After pleading guilty and before sentencing, if defendant commits any crime, other than minor traffic offenses, violates any condition of release that results in revocation, violates any term of this guilty plea agreement, intentionally provides misleading, incomplete or untruthful information to the U.S. Probation Office or fails to appear for sentencing, the United States, at its option, may be released from its obligations under this agreement. The Government may also, in its discretion, proceed with this agreement and may advocate for any sentencing position supported by the facts, including but not limited to obstruction of justice and denial of acceptance of responsibility.

## 12. NO RIGHT TO WITHDRAW GUILTY PLEA:

Pursuant to Rule 11(c) and (d), Federal Rules of Criminal Procedure, the defendant understands that there will be no right to withdraw the plea entered under this agreement, except

where the Court rejects those portions of the plea agreement which deal with charges the government agrees to dismiss or not to bring.

10/14/2020
Date

Jennifer Roy #47203MO
Assistant United States Attorney

10/14-20
Date

Clyde Jefferson
Defendant

10-14-2020
Date

Matthew A. Radefeld
Attorney for Defendant

15